## Hoffman, Treasurer v. James Paul Lumber Company

*David Swanson* of *Swanson, Bevevino & Millin*, for petitioners.

*William Clinger, Jr.,* of *Harper & Clinger*, for respondent.

WOLFE, P. J., February 22, 1973.—Petitioners, James Paul Lumber Company and Mildred R. Merry, request stay of execution on a tax surplus bond signed by them upon which judgment was entered by respondent herein, Jack E. McCool.

The bond was executed and delivered to respondent during his term of office as treasurer of Warren County and upon which respondent now seeks satisfaction as the owner of the property sold at treasurer's sale during his tenure in office.

Petitioners further request any record title of respondent in the subject premises be void as in violation of his statutory and common-law fiduciary duties as treasurer of Warren County.

Although petitioners commenced their action by petition for a rule to show cause in contravention of Pennsylvania Rules of Civil Procedure 1501, et seq., no objections were filed thereto and, on the contrary, respondent followed with an answer to the petition and, therefore, we will treat the action as properly commenced in equity as the parties intended and in conformity with the relief sought.

## STATEMENT OF ISSUES

1. Did respondent violate the County Code of August 9, 1955, P. L. 323, sec. 1806, 16 PS §1806, in that he

did, as an elected county officer, purchase directly or indirectly the property sold at a tax or municipal claim sale or, will the consummation of the sheriff sale have such effect?

2. Does respondent have any color of title, right or interest in the subject premises in his individual capacity?

After an evidentiary hearing, the court makes the following

## FINDINGS OF FACTS

1. Respondent was the duly elected treasurer of Warren County and served continuously as said treasurer for a period from January 1, 1964, to December 31, 1967, inclusive.

2. On August 16, 1965, petitioner, Mildred R. Merry, in her capacity as president of James Paul Lumber Company, was the successful bidder for $12,000, plus taxes, interest and costs, at an adjourned treasurer's sale held by respondent in his capacity as treasurer, of the subject premises situate in Spring Creek Township assessed and returned for the unpaid taxes of 1963 identified as reputed owner, "Unknown" and indicated as tax assessment Lot Number CY-9-346 containing 115 acres.

3. On August 16, 1965, petitioners paid the taxes and costs of $61.66 and executed a bid bond of $12,000 for the balance of the purchase money.

4. On August 16, 1965, respondent, as treasurer of Warren County, executed a treasurer's deed unto petitioner, James Paul Lumber Company, for the subject premises.

5. The said treasurer's deed was acknowledged in open court by respondent as treasurer of Warren County, on September 8, 1965, and entered in Minute Book Number 7 at Page 446 and recorded in the Re-

corder's Office of Warren County on October 25, 1967, in Deed Book 350, page 534.

6. Respondent, as treasurer, acknowledged in said treasurer's deed he sent by certified mail to the owner or terre tenant at their last known address the notice of tax sale as required by law at least 10 days before said sale.

7. The said premises, as sold at said tax sale, were not redeemed by any party.

8. On July 29, 1966, respondent, trading as Lane Development Company, purchased for the consideration of $500 from Alfred J. Knupp and the Warren National Bank, Administrator of the Estate of Montana O. Knupp, deceased, a parcel of land, inter alia, designated on the assessment maps of Warren County as CY-9-346 being and situate in Spring Creek Township, Warren County.

9. Prior to July 29, 1966, to wit, September 25, 1953, the Warren Bank and Trust Company, Trustee for the Warren Savings Bank and Trust Company, conveyed to Charles L. McCool and Jack E. McCool, partners, sundry tracts of land situate and lying in Elk County, McKean County, Clinton County, Sullivan County, Warren County and Forest County, Pa., for the purchase price of $1,409.

10. Charles L. McCool and Jack E. McCool are father and son, respectively, and have been in partnership continuously since 1949.

11. The said Warren Savings Bank and Trust Company intended to convey unto the grantees by the said deed all lands and interests in lands owned or held by it in the State of Pennsylvania and not specifically mentioned or described therein.

12. The deed of conveyance of September 25, 1953, does not convey any land situate in Spring Creek Township, Warren County, Pa., under schedule E of said deed as attached thereto.

13. The said Jack E. McCool and Charles L. McCool discussed between them that the subject premises purchased by James Paul Lumber Company prior to the 1965 treasurer sale was delinquent and would be up for bid and were generally familiar with the subject premises.

14. Charles L. McCool was a frequent bidder at treasurer sales held by his son during his tenure in office and purchased 64 properties situate in Warren County at different sales.

15. In August of 1966, respondent attempted to redeem the subject premises from a prior tax sale which was held in 1964 by paying the redemption money to himself as treasurer of Warren County and which redemption money was rejected by the attorneys for the successful bidder at the 1964 treasurer's sale.

16. The said Jack E. McCool, as treasurer of Warren County, and at the time of the 1963 treasurer sale, did not disclose to any bidders that either he, as an individual, or his father or his partnership with his father under the name of Lane Development Company, claimed any interest in the premises sold to James Paul Lumber Company.

17. The subject premises purchased by the James Paul Lumber Company has a fair market value of between $12,000 to $16,000, is unimproved and has marketable timber thereon.

18. Respondent, after his expiration as treasurer of Warren County, caused judgment to be confessed on the surplus bond executed by petitioners in the name of the current treasurer, Florence Hoffman, and against the petitioners in the amount of $12,000 and issued a money execution thereon for payment.

19. Petitioners have refused to pay the sum due on

the bond or the demand made by respondent for payment.

20. Respondent claims title to the subject premises by virtue of the 1953 deed to him in his individual capacity and by virtue of the quit-claim deed of July 29, 1966, from the Knupp Estate through Warren National Bank as administrator unto the partnership, Lane Development Company.

## DISCUSSION OF QUESTIONS OF LAW AND CONCLUSIONS THEREON

The Act of August 9, 1955, P. L. 323, sec. 1806, provides:

"No elected or appointed county officer shall be in any wise, either directly or indirectly, personally interested in any contract to which the county is a party, or in the construction of any public work or improvement made or undertaken under the authority of the county commissioners, or receive any reward or gratuity from any person so interested. No such officer shall purchase directly or indirectly any property sold at a tax or municipal claims sale."

All of the facts ineluctable conclude respondent has breached his fiduciary relationship and violated the prohibition of the act.

Respondent admits he had knowledge and was generally familiar with the subject premises prior to the treasurer's sale as well as his father with whom he has enjoyed a partnership and close relation since 1949. Indeed, his partner bid on the subject premises at the treasurer's sale held by his son.

Respondent's argument that petitioners likewise would be realizing a windfall if they are not brought to task on their bond is of no moment to him. When he elected to become treasurer, he stepped into a fidu-

ciary capacity and, in effect, accepted all of the rules and regulations that would apply to him in a position of trust. A sale by a county treasurer to himself or to his deputy has been held void as being against public policy: Coughlin v. Holmes, 53 Wash. 692, 102 P. 772; 85 C.J.S. 147 (1909). "A statute providing that no county officer or employe shall directly or indirectly be a purchaser of property at a tax sale is remedial in character and should be liberally construed": Empey v. Yost, 182 Wash. 17, 44 P. 2d 774; 85 C.J.S. 142 (1935). "As a general rule a public officer making an official sale of real estate for delinquent taxes cannot purchase thereat, and he acquires no title by such purchase, either personally or by an agent, and, while such sales have been held to be voidable, a sale to a firm of which the Officer was a member has been held to be void": 85 C.J.S. 141.

When we consider respondent's fiduciary position, the prohibition of the statute, respondent's knowledge of the delinquent taxes, and his knowledge and negotiations to have the premises conveyed to him after the sale compels us to conclude he has certainly indirectly, if not directly, dealt with the property for his own personal gain and is not entitled to the benefits from his labors.

We conclude also that respondent acquired no title in his own individual right through the 1953 conveyance as the subject premises were in no way described or identified in this conveyance.

We conclude, notwithstanding respondent's fiduciary capacity, that respondent cannot avail himself of any individual right in the 1966 deed he acquired from the Knupp Estate by reason of the doctrine of estoppel by deed. This doctrine applies when a grantor, who has no title to property he purports to convey and subsequently acquires title, [he] will not

be permitted to claim in opposition against the grantee to whom he conveyed: 23 Am. Jur. 2d, Deeds, §294. In the instant case, respondent purported to convey the subject premises as the treasurer of Warren County claiming no paper title in them, but subsequently acquires color of title by virtue of the 1966 deed. The doctrine of estoppel by deed rests upon the principle that to permit a grantor who sells land which he does not own and to assert a subsequently acquired title against the grantee would be to permit the grantor to perpetrate a fraud upon the grantee: Rauch v. Dech, 116 Pa. 157 (1887). This principle invokes the well-known equitable maxim that "equity regards as done that which ought to be done."

Respondent, with full knowledge of the bond placed by the purchasers executed his treasurer's deed to them acknowledging therein he had performed all the duties of his office by giving the owner or terre tenant written notice of the proposed sale.

We cannot conclude at the time of the sale respondent in any way relied upon the deed of 1953 as establishing any title in him or his partnership. This deed in no way, either directly or indirectly, describes the subject premises and we can only conclude respondent, after recognizing the $12,000 bond, struck out to acquire color of title from the Knupp Estate in order to pursue the bonded amount. At the hearing held, respondent argued forcefully he considered himself the owner of the subject premises prior to the treasurer's sale and it was through his inadvertence and distraction due to a personal family loss he committed the premises to public sale. However, respondent now argues in his law brief he had a remote and nebulous claim to the subject premises and, with such tenuous right of title he was in no position to claim redemption as an owner. Thus, in now so argu-

ing, respondent advances himself subsequent to the 1965 treasurer sale to the 1966 deed he acquired from the Knupp Estate to the Lane Development partnership and by this argument maintains there has been no violation of the statute.

These arguments cannot be acceptable. Respondent executed the treasurer's deed on August 16, 1965, to petitioners. This deed was delivered to petitioners on October 25, 1967, when respondent recorded it; thereby vesting title thereto in petitioners. Respondent now attempts to divest that title by the anomaly in purchasing the color of title from the Knupp Estate on July 29, 1966, entering judgment on the bond placed by petitioners and ordering execution on the judgment, thereby compelling petitioners, in order to maintain their title, to bid at the sheriff's sale the bonded amount of which respondent would realize.

To permit this type of conduct and circumvention would be a dereliction of our duty as chancellor sitting in equity.

Respondent argues if the court adopts petitioners' interpretation of the statute, a county treasurer is prohibited from permitting any property owned by him to be sold at a treasurer sale and, moreover, would be prohibited from buying any property sold at tax sale during his term in office. There is nothing in the language of the statute that would support either position. If a county treasurer neglects to pay his taxes, his property is subject to sale as any other owner and he would have the right of redemption. Accepting a fiduciary position does not strip the office holder of his legal rights, it merely prevents such trustee from gaining personally at the expense of his public office. In any event, this is not the situation here. By reason of respondent's knowledge and position he has gained an advantage and has misled petitioners. Would peti-

tioners have bid and placed a $12,000 potential expense to themselves if they had any knowledge the auctioneer lay in wait for them to take away that which he has sold?

As to petitioners' title, we conclude, as stated in White v. First National Bank of Emporium, 24 F. Supp. 293 (1938), "The purchaser at a treasurer's sale acquires a deed in fee simple. He becomes the record owner and has an absolute title to the property for all purposes as against all the world. All the former owner has is a right of redemption which he may choose to exercise within two years. Within this two year period the purchaser's title is defeasible only to the former owner. The purchaser's title is complete for all other purposes."

In the instant case, since the period of redemption has run, we conclude petitioners have acquired a fee simple title in the subject premises and, therefore, we enter the following

### DECREE NISI

And now, to wit, February 22, 1973, the court finds and decrees that respondent, Jack E. McCool, has no right, title or interest in the subject premises known and identified as "Unknown" and assessed on the tax assessment maps of Warren County as CY-9-346 being and situate in Spring Creek Township, Warren County, Pa., containing 115 acres, more or less, and being the same premises as conveyed by Jack E. McCool as treasurer of Warren County to James Paul Lumber Company by deed dated August 16, 1965.

The said Jack E. McCool has no right, title or interest in the foregoing described premises as an individual nor in his capacity as a partner in the partnership of Charles L. McCool and Jack E. McCool, or as Jack E. McCool, trading as Lane Development Company.

The judgment confessed on the surplus bond in the name of Florence Hoffman, treasurer of Warren County, against James Paul Lumber Company and Mildred R. Merry, is null and void and the prothonotary is directed to mark the judgment satisfied of record.

The said Jack E. McCool, his heirs, executors, administrators or assigns, are and shall be forever barred from hereafter asserting any claim, right, title or interest in or to the subject premises purchased by James Paul Lumber Company from Jack E. McCool, treasurer.

James Paul Lumber acquired a fee simple title in and to that certain tract of land situate in Spring Creek Township, County of Warren and State of Pennsylvania, described as Identification Number CY-9-346 and containing 115 acres, more or less.

In the event no exceptions are filed to the within decree nisi within 20 days after notice of filing thereof, the prothonotary, upon praecipe of petitioners, shall enter the final decree as absolute.

The foregoing decree nisi shall be entered by the prothontary on the judgment index on the law side of the court.

If no exceptions are filed hereto and subsequent to the decree absolute, the prothonotary shall cause to be recorded a certified copy of this decree in the Recorder's Office of Warren County, Pennsylvania.

All record costs to be paid by respondent, Jack E. McCool.

## ADJUDICATION SUR EXCEPTIONS

WOLFE, P. J., April 16, 1973.—Plaintiff has excepted to findings of fact, conclusions of law and the decree nisi of February 22, 1973.

Argument has been heard on the exceptions and

the court has carefully reconsidered its findings of fact and conclusions of law thereon as well as the decree nisi and finds no essential or compelling reasons either in law or equity to alter or modify or reverse.

Plaintiff's main argument is the court unduly extended the doctrine of "estoppel by deed" in this case asserting the doctrine is limited to conveyances containing warranties; and since, in the current case the conveyance was by virtue of a treasurer's deed in that no warranty was made either expressly or implicitly, there was a misapplication of this doctrine. Plaintiff cites Kennedy v. Skeer, 3 Watts 95 (1834), in support of this position. Plaintiff parallels this case with the instant one in that Kennedy held a grantor is not estopped from claiming under a better title subsequently acquired by him, notwithstanding he had assigned his interest in a treasurer's deed to defendant for the same land. A careful reading of this case concludes that it cannot apply to the instant case and is inapposite for two reasons. First, the treasurer's deed in Kennedy was admitted to be an invalid deed in the first instance and plaintiff had made an assignment of his interest in it whatever that might have been. Second, plaintiff in Kennedy was not in a fiduciary capacity as plaintiff-respondent is in the instant case.

The Act of May 29, 1931, P. L. 280, sec. 13, 72 PS §5971m, requires the treasurer, subsequent to the posting of a surplus bond for the purchase price of the property sold at the sale, to forthwith file it in the office of the prothonotary. Thereafter and from the time of the date of the bond [it] shall bind,

"As effectually and in like manner as judgments, the land by said treasurer sold into whose hands or possession it may come; and the owners of said lands, *at the time of sale,* their heirs or assigns, or other

legal representatives, may, in not less than two years or more than five years after confirmation of such sale, cause judgment to be entered in said court upon said bond, in the name of said treasurer, for the use of said owners, their heirs, assigns or legal representatives." (Italics supplied.)

Here, plaintiff-respondent held no title in himself as an individual in the subject premises *"as the owner of said land, at the time of sale."* Plaintiff-respondent's color of title to the subject premises was acquired subsequent, [1966] to the treasurer's deed [1965] with plaintiff-respondent acting as treasurer.

We refer to 28 Am. Jur. 2d, Estoppel and Waiver, §11, to answer the objection the court has interpreted too broadly the application of "estoppel by deed" as applicable to the instant case:

"The view has been taken in many cases, although there are others to the contrary, that a person who, acting in a representative capacity, executes a conveyance of land, without reservations, which purports to convey the entire property or the fee in the property, or which represents that the title is in another, is estopped to claim in his individual capacity an interest in the property. Thus agents, corporate officers, guardians, trustees, and executors and administrators have been held to be estopped by execution of conveyances in the foregoing representative capacities to assert any individual interest in property." (Citations omitted.)

"It has been pointed out, however, that in order to create an estoppel against a person conveying land in a representative capacity, *it is not necessary that the deed contain covenants."* (Italics supplied.) (Citations omitted.)

"Some authorities have taken the view that a per-

son who executes a transfer of land in a representative or fiduciary capacity is not estopped to claim an interest in the property in his individual right. Thus, it has been held that corporate officers, attorneys, and executors and administrators are not estopped to assert an interest in property in an individual capacity by having executed deeds in the foregoing representative capacities."

There can be no doubt a county treasurer is in a fiduciary capacity and the majority of the cases, supra, hold a fiduciary is estopped from asserting any right, title or interest in premises conveyed in that capacity to defeat the conveyance by title acquired subsequently thereto in a nonfiduciary capacity. We elect to follow the majority rule in this case.

We have considered the other exceptions both as to findings of fact and conclusions of law and find nothing in the evidence presented that would compel any modification or reversal. The evidence presented was, for the most part, factual and nonadversary leaving for decision a question of law.

For the foregoing reasons, the court enters the following

## FINAL DECREE

And now, to wit, April 16, 1973, the exceptions of plaintiff-respondent are dismissed in total and the decree nisi entered by the court on February 22, 1973, is made absolute and the prothonotary is ordered to enter the within final judgment on the judgment index of the law side of the court and give written notice by ordinary mail to counsel for petitioner and counsel for respondent of the entry of the within final decree and the date thereof.

Exceptions to plaintiff-respondent.